IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

VÍCTOR M. RODRÍGUEZ ROQUE,

Plaintiff

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant

CIVIL 09-1690 (JAG)

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

On July 22, 2009, plaintiff filed this petition for judicial review of a final decision of the Commissioner of Social Security which denied his application for a period of disability and Social Security disability insurance benefits. The answer to the complaint was filed on December 29, 2009. (Docket No. 10.) The case was then referred to me on January 7, 2010 for a report and recommendation. (Docket Nos. 11, 12.) The defendant filed a memorandum in support of the final decision on July 8, 2010 (Docket No. 16) and plaintiff filed a memorandum against such final decision on July 15, 2010. (Docket No. 18.)

The only issue for the court to determine is whether the final decision that plaintiff is not under a disability is supported by substantial evidence in the record when looking at such record as a whole. In order to be entitled to such benefits, plaintiff must establish that he was disabled under the Act at any time on or

CIVIL 09-1690 (JAG)                    2

before February 2, 2009, the date of the final decision.  Plaintiff last met the earnings requirements for disability benefits under the Social Security Act on December 31, 2009, but not thereafter.  See Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 140 n.3 (1st Cir. 1987).

After evaluating the evidence of record, the administrative law judge entered the following findings on February , 2009:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.
2. The claimant has not engaged in substantial gainful activity since November 1, 2003, the alleged onset date (20 CFR § 404.1571 et seq.).
3. The claimant has the following severe impairments: disorders of the back and an affective disorder. (20 CFR § 404.1521 et seq.).
4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR § 404.1525 and 404.1526).
5. I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404. 1567(c) [lift and carry 50 pounds occasionally and 25 pounds frequently].He can sit, stand, and (sic) a walk for about six hours in an eight hour workday.  He is not limited in pushing and pulling with his upper and lower extremities.  He has no postural, manipulative, visual, communicative, or environmental limitations.  From the mental standpoint, he is able to learn, understand, remember, and carry out simple and detailed instructions and tasks; he is able to maintain attention and concentration for at least two hour intervals; he can use judgment in making work-related decisions; he can adapt and deal with changes in work settings and environments; and, he can relate to and interact with others, such as supervisors and co-workers.

CIVIL 09-1690 (JAG)                           3

6.  The claimant is capable of performing past relevant work as an Administrative Officer.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).
7.  The claimant has not been under a disability, as defined in the Social Security Act, from November 1, 2003 through the date of this decision (20 CFR § 404.1520(f)).

Tr. at 20-26.

Plaintiff has the burden of proving that he has become disabled within the meaning of the Social Security Act.  See Bowen v. Yuckert, 482 U.S. 137 (1987).  A finding of disability requires that plaintiff be unable to perform any substantial gainful activity or work because of a medical condition which has lasted or which can be expected to last for a continuous period of at least twelve months.  See 42 U.S.C. § 416(i)(1).  In general terms, evidence of a physical or mental impairment or a combination of both is insufficient for the Commissioner to award benefits.  There must be a causal relationship between such impairment or impairments and plaintiff's inability to perform substantial gainful activity.  See McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1120 (1st Cir. 1986).  Partial disability does not qualify a claimant for benefits.  See Rodríguez v. Celebrezze, 349 F.2d 494, 496 (1st Cir. 1965).

The finding of the commissioner reflects an application of step four of the sequential evaluation process.  See 20 C.F.R. § 404.1520(e).  At step four the initial burden is on the claimant to show that he can no longer perform his former

CIVIL 09-1690 (JAG)                              4

work because of his impairment(s).  Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 17 (1st Cir. 1996); see Santiago v. Sec'y of Health & Human Servs., 944 F.2d 1, 5 (1st Cir. 1991).  Thence, the Commissioner must compare the physical and mental demands of the past work with the current functional capability.  See 20 C.F.R. § 404.1560(b).  At this stage, the administrative law judge is entitled to credit a claimant's own description of his former job duties and functional limitations but has some burden independently to develop the record. See Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d at 17; Santiago v. Sec'y of Heath & Human Servs., 944 F.2d at 5-6.

Plaintiff argues in his memorandum of law that the administrative law judge did not adequately consider his allegations of disabling pain and exertional limitations.  He argues further that the administrative law judge erred in determining that plaintiff had the residual functional capacity for performing his past relevant work as administrative officer, and in failing to accord weight to the treating or examining physicians' findings.  He complains that there was no vocational expert evidence, that is, that the administrative law judge rejected all of the treating physicians' findings and did not seek the advice of a vocational expert. He notes that the administrative law judge committed error in finding that there was no (hospital or clinic) admission when in fact INSPIRA records show plaintiff as a daily in-patient and receiving ambulatory treatment.  (Docket No. 18,

CIVIL 09-1690 (JAG) 5

at 10.) Plaintiff's Global Assessment Functional score dropped to 50 and concurred with the 45-50 GAF score from Santa Cruz Behavorial on July 9, 2007, evidence ignored by the administrative law judge. (Tr. at 289.) Plaintiff argues further that "the Administration has failed to provide a transcript of hearing testimony, the record is incomplete as to Plaintiff's testimony for the hearing and the issue of Plaintiff's credibility cannot be addressed here." (Docket No. 18, at 11.) He complains of the Avery analysis of the administrative law judge and insists that his own residual functional capacity renders him incapable of performing his past relevant work. Plaintiff requests that the case be remanded under sentence four of 42 U.S.C. § 405(g).

Plaintiff has a history of diabetes dating from 1992 and arterial hypertension since 1995. He has suffered from diabetic neuropathy, osteoarthritis, lumbar discogenic disease and vertebral spondylolisthesis since 2001. In spite of these conditions, which he admirably dealt with, he retired in October 2003. (Tr. at 20.)

At the December 1, 2008 administrative hearing, plaintiff, then 57, testified that he was alleging disability since the age of 51. He has a B.S. in political Science. Plaintiff worked as "Administrative officer 4" in a (state government) general services office from 2000 to 2003 and had worked in the same department for 30 years. (Tr. at 95-96.) He alleges that he became disabled in

CIVIL 09-1690 (JAG)                             6

November 2008, two months after he retired.  The retirement became effective January 2004.

Plaintiff had episodes of depression.  He had pain in the extremities and back.  Regarding those problems, he went to the State Insurance Fund in 1998 and 1999.  (Tr. at 96.)  Plaintiff said he was hospitalized in a [Inspira] program for psychiatric help and is still there for treatment.  (Tr. at 97.)  He uses a cane prescribed by a physiatrist, Dr. Luis Flores Vilar, in 2000.  (Tr. at 98.)  He lives with his wife who is also retired.  He helps his wife with practically no family chores because of his back condition and his herniated discs.  He also has discomfort in the shoulders which is why he cannot lift too much.  While he has a driver's license, he does not drive.  (Tr. at 100-01.)  He has two old vehicles, both broken.  He basically conducts no activities except for talking.  (Tr. at 102.) He stays home, sits in a chair, reads a little and listens to music.

Plaintiff has been a diabetic for 20 years and takes insulin.  He has diabetic neuropathy, with pain in the legs and extremities.  He loses sensitivity.  His fingers get swollen.  (Tr. at 104.)  He cannot close his hands or make a fist but uses a cane using two fingers.  (Tr. at 104-05.)  He has erectile dysfunction and loss of balance.  He has received traction treatment for his cervical vertebra.  It does not take pain away but relaxes him.  He cannot move his neck.  On a scale of 1 to 10, with 10 as the worst pain, he considers that he has a level 3 pain in the

CIVIL 09-1690 (JAG)                              7

neck.  (Tr. at 106.)  He has more or less the same 3 for his back pain.  This is with medication.  Plaintiff corrected his testimony to change the numbers to 8 with medication and 10 without.  He takes medication including Cymbalta for pain and depression.  He had taken Percocet.  (Tr. at 108.)  Plaintiff said he cannot move for long distances and can sit for no more than 20 to 25 minutes.  He can remain standing for 10 minutes or less and can walk for 4 or 5 minutes because of the pain in the legs.  He can walk with a cane for eight minutes and has used a cane for a year.  (Tr. at 109.)  He cannot lift more than 5 pounds.  He testified that all of his doctors have told him he has fibromyalgia.  (Tr. at 110.)  He related being an in patient for two weeks at one time.  That has not finished.  He started with group therapy.  He has received treatment from different mental health professionals, the first being psychiatrist Dr. William Julio in April 2006.  (Tr. at 112.)  He was given Prozac which helped.  Plaintiff related his stress caused by his physical situation.  He goes into his room and cries.  His concentration is very deteriorated.  The only activity that he performs during the day requiring some type of exertion is to wash dishes after breakfast.  (Tr. at 115.)  He does not sleep well at night.  He has atrophied muscles everywhere.  He cannot reach his feet when he showers.  Plaintiff explained the specialties of the doctors who treated him.  (Tr. at 118.)

CIVIL 09-1690 (JAG)                                8

Plaintiff argues in his brief that the Social Security Administration failed to provide a transcript of hearing testimony, and that the record is incomplete as to his testimony so that the issue of his credibility cannot be addressed here. (Docket No. 18, at 11.)  This argument is completely undeveloped in the face of a certification by translator/transcriber Conrado García that the transcript is a true and complete translation/transcription of the testimony recorded at the hearing in the case of plaintiff held before the administrative law judge.  (Tr. at 119.) Therefore the matter will not be further discussed.  On the other hand, plaintiff argues that the administrative law judge erred in stating that he had not been admitted (no admission) relating to hospitalization.  Plaintiff might appear to be correct since the judge notes that plaintiff was treated as outpatient with oral medication at Inspira.  (Tr. at 21.)  Records from Inspira reflect admission for severe major depression on December 31, 2007 at 9:35 A.M. and discharge on January 9, 2008 at 8:15 A.M.  (Tr. at 396.)  Individual and group therapy were pursued and were beneficial.  He received maximum benefit from his treatment during the height of the Christmas season. He improved significantly in his mental state.  He was oriented in three spheres and was logical and coherent at discharge. (Tr. at 397.)  He then continued with ambulatory treatment.  This is a confusing record but it appears that even as admitted, the treatment was ambulatory. (Docket No. 18 at 12.)  The administrative law judge later notes that

CIVIL 09-1690 (JAG)                              9

plaintiff has not required recurrent hospitalizations, the inference being that the record reflects at least one, and that the administrative law judge was well aware of it.  (Tr. at 24.)

Studies of the cervical spine dated April 4, 2006 showed straightening and underlying paravertebral muscle spasm. Osteophytic spurring was noted at C3-C5 through C6-C7 with decreased intervertebral disc spacing at C4-C5 through C6-C7 with degenerative disc disease changes.  There was no evidence of neural foramina encroachment.  Lumbar spine X-rays showed minimal levoscoliosis, paravertebral muscle spasm and osteophytic spurring throughout the spine.  (Tr. at 263.)

Dr. William Julio started plaintiff on Cymbalta and Effexor on May 1, 2007. (Tr. at 282, 294.)  The doctor noted major depressive disorder.  Clinical psychologist Dr. Jorge E. Berríos Lugo reported on July 18, 2007 that plaintiff's symptoms suggested that he could be suffering from cognitive changes associated to his medical condition exacerbated by his depressive state. He diagnosed major depressive disorder, moderate without psychotic features. (Tr. at 289.)  An MRI of the brain on April 19, 2007 showed only upper cervical spine spondylosis. (Tr. at 310.)

A psychiatric review technique form dated August 13, 2007 by clinical psychologist Dr. Lillian González, Ph.D., reflected affective disorder, unspecific

CIVIL 09-1690 (JAG)                           10

except that she noted a depressive disorder.  (Tr. at 323-37.)  There were mild B criteria functional limitations from Listings 12.04.  (Tr. 333.)  Internist Dr. María de Lourdes Telmont evaluated plaintiff on September 24, 2007.  She noted he had never been hospitalized.  She diagnosed diabetes mellitus type 2 from 1992, mild paralumbar muscle spasm, degenerative vertebral and disc disease with narrowing of all lumbar disc spaces and grade I anterolisthesis of L4 by X-rays, diabetic neuropathy, controlled arterial hypertension, severe mental depression, bilateral carpal tunnel syndrome, atypical chest pain and fibromyalgia.  (Tr. at 340.)  Plaintiff had no hand limitations.  Tinel and Phalen tests were negative.  (Tr. at 345-49.)  Gait was normal.

A physical residual functional capacity assessment by Dr. Gilberto Fragoso dated October 15, 2007 reflects exertional limitations, occasionally lifting 50 pounds, frequently lifting 25 pounds, unlimited ability for pushing or pulling.  Plaintiff was able to sit and stand about six hours each in an eight-hour workday, allowing for breaks in the workday.  (Tr. at 352.)  There were no limitations in the ability to climb, balance, stoop, kneel, crouch, and crawl.  (Tr. at 353.)  There were also no manipulative limitations in reaching, handling, fingering, and feeling.  (Tr. at 354.)  This assessment was adopted by Dr. Osvaldo Rivera on May 14, 2008.  (Tr. at 436.)

CIVIL 09-1690 (JAG)                              11

A mental residual functional capacity assessment by clinical psychologist Dr. Luis Umpierre dated May 21, 2008 reflected moderate or no significant limitations in understanding or memory, sustained concentration and persistence, social interaction, and adaptation. The psychologist noted that all of the evidence in the file supported the presence of a depressive disorder of a moderate, or mild to moderate degree of severity, referring to the last notes from Inspira dated March 21, 2008. The emotional condition was considered mild to moderate. The psychologist opined that plaintiff retained the capacity to understand, recall and carry out simple and detailed instructions. Plaintiff could maintain a simple interaction with others. Intellect, memory and judgment were conserved enabling him to make simple decisions and adjust to minor work changes and demands. He could sustain concentration for at least two hour intervals and complete a normal workday and workweek. (Tr. at 452-54.) A physical residual functional capacity assessment dated June 23, 2008 from the Meljor Rehabilitation Center in San Juan noted restrictions in every factor considered. (Tr. at 457-61.) The report notes plaintiff is permanently disabled, unable to be involved in a productive job due to his psychological condition as well as his diabetic neuropathy, osteoarthritis, disc disease, and fibromyalgia. His ability to make occupational adjustments, performance adjustments and personal/social adjustments were generally considered fair or poor. (Tr. at 464-68.)

CIVIL 09-1690 (JAG)                              12

The administrative law judge noted that plaintiff's high blood pressure was controlled with drugs and resulted in no end organ damage. The administrative law judge noted that medical reports showed no evidence of advanced osseous pathology of motor loss, atrophy or loss of leg function which could establish any type of advanced nerve root involvement. The back ailments were considered intermittent in nature due mostly to muscle strain and spasms which plaintiff treated conservatively. The administrative law judge noted that plaintiff stated that all treating physicians have noted that he has fibromyalgia in combination with neuropathy. A disability report of June 28, 2007 by plaintiff shows a visit to Dr. Luis Olivares Pagán sometime in 2006 with a last visit in May 2007, and a next visit in August 2007, for fibromyalgia and osteoarthritis. (Tr. at 177.) There is also a visit with Dr. Nicolás Pérez Maldonado in April 2007 and a last visit in May 2007, with the reason for the visit spondylosis osteoarthritis, carpal tunnel syndrome and other maladies. (Tr. at 178.) The administrative law judge noted: "There is no evidence in record in regards to a diagnosis of fibromyalgia or carpal tunnel syndrome." (Tr. at 21.) My review of the record reflects that at least two doctors, (including Dr. Larry Van Daalen who refers to carpal tunnel by history), note fibromyalgia by history. (Tr. at 360.) A treating psychiatrist, Dr. Luis M. Polo, notes carpal tunnel syndrome as contained in medical/clinical findings, except that my review of the legible record reveals that there is one diagnosis of

CIVIL 09-1690 (JAG)                         13

bilateral carpal tunnel syndrome and fibromyalgia by Dr. Telmont on September 24, 2007. (Tr. at 340, 465.) She also noted that plaintiff had no limitations while sitting, standing, walking, lifting, or carrying. (Tr. at 340.) Dr. Luis Jorge Flores-Vilar's neurological medical report of July 2, 2007 contains diagnoses starting with herniated nucleus pulposus and ending with fibromyalgia (with a notation "observed" next to it). (Tr. at 307.) He also refers to fibromyalgia in his note of June 23, 2008. (Tr. at 461.) Dr. Van Daalen makes a diagnosis of fibromyalgia on July 31, 2007. (Tr. at 365.) On February 28, 2008, he refers to fibromyalgia by history. (Tr. at 360.) Records of the Instituto Psicoterapéutico de Puerto Rico also reflect diagnoses of fibromyalgia and/or carpal tunnel syndrome, Axis III (physical diseases which may or may not be related to Axis I diagnoses). (Tr. at 394, 396, 398, 399, 404, 415.)

The administrative law judge noted out patient treatment for the mental condition (although there was over a week of "daily in patient" treatment ending January 9, 2008 which appeared completely successful). The condition developed in 2006. The administrative law judge noted that findings were generally of a mild to moderate intensity and there was no evidence of gross emotional instability. Plaintiff was reported to be with active depression, and poor capacity to cope and make adjustments. The administrative law judge found mild restrictions of daily activities, and moderate difficulties in social functioning. The administrative law

CIVIL 09-1690 (JAG) 14

judge noted that the leg symptoms seemed due to plaintiff's neuropathy and worsened by his obesity. The administrative law judge concluded that the musculoskeletal impairments were mild to moderate and the affective disorder was moderate in nature.

The administrative law judge acknowledged allegations of severe disabling pain. Consequently, as the rationale reflects, the administrative law judge's analysis was governed by SSR 96-4p, SSR 96-7p, and circuit case law. See Avery v. Sec'y of Health & Human Servs., 797 F.2d 19 (1st Cir. 1986). The factors to be weighed under the correct standard are the following:

> (i) Your daily activities;
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3); see also SSR 96-7p.

The administrative law judge closely observed plaintiff at the administrative hearing and took those observations into account in making his findings. (Tr. at

CIVIL 09-1690 (JAG)                              15

24.)  While not going down the list, the administrative law judge addressed these factors carefully within the supporting rationale for the final decision.  (Tr. at 23-25.)  It was noted that plaintiff did not require intensive or aggressive medical treatment, recurring hospitalization or frequent emergency treatment.  (Tr. at 24.)  The administrative law judge noted that he could not find plaintiff's allegations credible, relying on the objective medical reports and findings and other medical and non-medical evidence of record and consistent with assessments made by state agency personnel based on examination of the record.  (Tr. at 24.)  The administrative law judge did not give controlling weight to the reports of three treating physicians because they were not well supported nor were they consistent with the preponderance of the medical evidence of record.  Treatment was conservative, which does not point to a disabling severity.  The administrative law judge also noted that there were not sufficient satisfactory explanations for the bases of the conclusions of the treating physicians.  The administrative law judge relied more on the evaluations of the state agency qualified medical personnel in reaching his findings as to the extent of plaintiff's limitations in terms of severity.  (Tr. at 26.)  While plaintiff has argued that greater weight should be given to the medical evidence from his treating physicians, it is well settled that even the opinions of treating physicians are not necessarily entitled to greater weight merely because they are those of treating

CIVIL 09-1690 (JAG)                          16

physicians. Rodríguez Pagán v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Sitar v. Schweiker, 671 F.2d 19, 22 (1st Cir. 1982); Pérez v. Sec'y of Health, Educ. & Welfare, 622 F.2d 1, 2 (1st Cir. 1980); Rosado-Lebrón v. Comm'r of Soc. Sec., 193 F. Supp. 2d 415, 417 (D.P.R. 2002). The administrative law judge is not always required to give such opinions controlling weight. See 20 C.F.R. § 404.1527(d); Barrientos v. Sec'y of Health & Human Servs., 820 F.2d 1, 2-3 (1st Cir. 1987); cf. Sánchez v. Comm'r of Soc. Sec., 270 F. Supp. 2d 218, 221 (D.P.R. 2003). The administrative law judge found that the preponderance of the medical evidence is not consistent with plaintiff's allegations, and also did not give full credibility to the allegations because they were not compatible with the information contained in the reports of the non-treating state agency physicians, as well as the medical history. See 20 C.F.R. § 404.1527(f); SSR 96-6p.

Plaintiff was hospitalized (daily in patient) for a bit over a week for his mental condition and his treatment was a success. The administrative law judge concluded that during the covered period, from November 1, 2003 through February 2, 2009, plaintiff retained the residual functional capacity to perform his past relevant work as an administrative officer. Note that except for a CT scan of 1992, there is no medical evidence in the record dated before April 2006.

CIVIL 09-1690 (JAG)                    17

It is clear that the administrative law judge was not required to weigh the evidence and then determine that plaintiff was disabled under the Act. The lack of portent in the medical examinations, absence of end organ damage from diabetes, lack of intense treatment, controlled arterial hypertension, and the weighing of the reports of the treating physicians lend support to the final decision. Neither examining nor non-examining physicians found that plaintiff had met a Listing. There is no evidence of portentous decompensation after the onset date of November 1, 2003. Indeed there is no treatment thence until 2007, placing into serious question the alleged presence of disabling pain and ensuing limitations during that time. The 45-50 and 50 GAF scores are inconsistent with other evidence considered by the administrative law judge and can not be considered the linchpin upon which to rely for a determination of error. Furthermore, the administrative law judge was entitled to observe plaintiff at the hearing and it is clear that his demeanor did not reflect any extreme discomfort or distress during the hearing. See Frustalgia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987). The administrative law judge concluded in spite of the musculoskeletal pathology and symptoms, except for somewhat limited trunk movement, the record showed adequate physical mobility and adequate weight bearing capabilities. (Tr. at 21.)

CIVIL 09-1690 (JAG)                              18

I conclude that the final decision reflects a reasonable balancing and weighing of evidence and the making of credibility determinations by the administrative law judge. See Gray v. Heckler, 760 F.2d 369, 374 (1st Cir. 1985); Tremblay v. Sec'y of Health & Human Servs., 676 F.2d 11, 12 (1st Cir. 1982); Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981). Further, the power to resolve conflicts in the evidence lies with the Commissioner, not the courts. Id.; see Barrientos v. Sec'y of Health & Human Servs., 820 F.2d 1, 2-3 (1st Cir. 1987). In the resolution of such conflicts, I cannot say that the substantial evidence rule has been violated. If there is a substantial basis in the record for an administrative law judge's decision, the court must affirm the decision, whether or not another conclusion is possible. See Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991).

In view of the above, I find that the administrative law judge has complied with the requirements of the substantial evidence rule. See Richardson v. Perales, 402 U.S. 389, 401 (1971). I therefore recommend that the final decision be affirmed and that this action be dismissed.

Under the provisions of Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within ten (10) days of the party's receipt of this report and recommendation. The written objections must specifically identify

the portion of the recommendation, or report to which objection is made and the basis for such objections. Failure to comply with this rule precludes further appellate review. See Thomas v. Arn, 474 U.S. 140, 155 (1985); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988); Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).

At San Juan, Puerto Rico, this 11th day of August, 2010.

S/ JUSTO ARENAS
Chief United States Magistrate Judge